Thank you. Michael Morgis for Dahlia Appellant. I'd like to reserve five minutes for rebuttal. Whatever we've got left on the clock will be all yours. Great. We want you to overrule Hubbard, plain and simple. We think it was wrongly decided. In fact, it was wrongly decided. It doesn't follow Garcetti's practical inquiry and instead relies upon formalized descriptions. It does not follow any of the Ninth Circuit case law, including Anton v. North Central Counties Consortium, Claremont v. Sound Mental Health, Eng v. Cooley, particularly Friedegg v. Ayers, Marable v. Mitchum, Carl v. City of Mountain, Lake Terrace, Posey v. Lake 10, or a school district, the first post-Garcetti decision of this Court, where the Court determined that. Do we have to overrule it in order to come out in your client's favor? I believe you do, because the panel felt constrained by the decision in Hubbard that any reporting of misconduct under any circumstances to anyone. Hubbard involved reporting to the FBI, right? FBI? In Hubbard or in Dahlia? In Hubbard. Well, that's the funny thing about Hubbard. The first two instances it looked at, it actually did apply the correct law, I believe. It looked at the circumstances. It looked at the facts. It even talks about mixed question of fact and law. And then when it gets to the FBI, that's when it uses Kristall as some sort of shorthand to say, well, that's they have to do that anyway. So that's a yes? Yes. Okay. In your case, in your client's case, it was the sheriff, right? Yes. Now, I sort of understand the relationship between the FBI and the local authorities. There's some duty to cooperate with Federal authorities. Local officials swear to uphold the Constitution of the United States as well as the Constitution of the State. But I'm not sure what, I'm sorry, in a sense they are sort of in the same chain of command. But sheriff is different, isn't it? I mean, sheriff, what authority does a sheriff have? In your case, it was your client cooperated with the sheriff, right? To the sheriff's department, right. As far as I know, I mean, maybe directly on this, but as far as I know, the sheriff of, this is L.A. Sheriff, right? Right. He has no authority over the police department, the Burbank police department. They're not in any way chain of command. There's no duty running to them at all, right? That's correct. So the cases could be distinguished, right? As Hubbard being a chain of command case, whereas this being just a case where he speaks There's no duty to speak to the sheriff, but there may well be a duty to speak to the Federal authorities, right? Is the FBI in the chain of command of the Burbank police? No. No, I don't know why the FBI would be in the chain of command. No, it's an interesting question. Let's say a local police officer discovers a, something that's purely a Federal crime, like counterfeiting, a currency counterfeiting ring, and just says nothing about it, reports nothing, doesn't tell his superiors, doesn't report to the Federal authorities, all of that. I would think that could be disciplined. I mean, it's a crime. He swore to uphold the Constitution, Federal Constitution, as well as, I mean, he has some duty as a law enforcement officer. I would imagine at the very least, and this is the problem with Hubbard and the case it relies on, at the very least, it would be implausible to say that he doesn't have to at least report it to his immediate supervisor within his department. Is there any difference between his duty to report a crime that he observes anywhere in the county of Los Angeles to the county authorities than there is to report a Federal crime to the Federal authorities? I don't know that he has a duty to report either one. And again, I don't know. Is there any difference between whatever his duty is with respect to reporting a crime which occurs in the county of Los Angeles where Burbank is located? Is there any difference in his duty to report a crime to the county authorities or to the Federal authorities? That may depend on his employer's rules. His employer may want him to first go through the employer. The county has no jurisdiction within the city of Burbank. The sheriff has jurisdiction over unincorporated portions of L.A. County. So if you commit a crime in speeding or, you know, common law crime on the Sunset Strip, let's say, a Sunset Strip, I think, is county or, you know, large portions of unincorporated Los Angeles, then there is a crime for which the sheriff is responsible. But the sheriff has no jurisdiction. The county has no laws applicable within the city of Burbank. So there's a – whereas the Federal government does. The Federal government counterfeiting is, in fact, a crime in Burbank as much as in San Francisco or Washington, D.C., right? Yes. But the practical reality and what Garcetti requires us to inquire into is, does he have a duty pursuant to the terms of his own employer to report that directly? Does he have to first go to his department? Maybe they want to funnel it a certain way. So if State legislature passes a law that says every police officer is responsible to report crimes to other authorities if his joint chain of command does not respond, then that would remove the First Amendment violation here, right? So if the State just imposes that duty, that's enough, right? That would cut you. You know, I don't really know that it does under Garcetti, because if he's retaliated against the Federal government. But you said if the – that depends on what the rules are in Burbank. So if, for example, the rules in Burbank are you've got to report to the Federal authorities, then you say in that case there was no First Amendment protection, right? That's what I heard you saying, which I think you gave away more than you needed for your client, right? Oh, I hope I didn't. Counsel, counsel, did the complaint disclose anything about whether Mr. Dahlia had contacted the FBI? I'm looking at paragraph 47, and he said there were some rumors. But did Dahlia ever contact the FBI? Subsequently. But is it in the complaint? No, it is not. Thank you. I have a question. Well, I guess it's a concern and a question in all of those, that obviously police – that job is different than most of our jobs. And so that – is what you're saying is every police department might be different in terms of what your duties are? It could – well, let me give you – And is that – you know, my concern is that obviously – and I think police departments, both the management and the unions, are fairly well known for antagonizing one another. And so, you know, we don't want a million 1983 cases, but then on the other hand, we don't want situations where the management can be retaliatory. And so, you know, it seems like police officers are defined that any time they see anything wrong, they have to do something about it. But I guess the question is, what do they do about it and to what extent do they do about it? And by the way, I think unions' jobs are to be antagonistic. That's why they exist. Mr. Morgan, could I ask you a question? Sure. Does Burbank have a branch of the superior court in it? I don't know, but it may. Let's suppose they do, yes. It does.  And let's suppose that one goes to the superior court and one sees a sheriff there who's a bailiff, because the bailiffs are sheriffs, right? Sheriff's deputies, right? And suppose a Burbank police officer sees a defendant in a criminal case pass some money to a juror. Does he have the obligation to tell the bailiff that a juror is being bribed or only to his own Burbank police officer? Again, I think that that would depend upon what his employer's direction is to him. I could see, envision a situation where the department says, if you suspect a crime that's outside of our jurisdiction, you still need to report it to us first. But none of that is alleged in the complaint. No, it's not alleged in the complaint. And there's been no judicial notice taken of any regulations or of any contracts between the sheriff's department and the Burbank police department. No. And I think knowing what I know now – well, first, the defendant's not submitting anything through a question of judicial notice since this was at the motion-to-dismiss stage. But knowing what I know now, especially after the law has developed somewhat since this complaint, I probably would draft it to include provisions that say I know of no regulation, I know of no – I've never been asked to do this, I don't know of anybody that's been asked to do it. And things that would be factual allegations showing that there is no duty to do it. But this was addressed briefly before. Garcetti does say you can't write overbroad job descriptions that aren't realistic. And if the job description were to say just, you know, in general the police have to report any wrongdoing they see or any illegal activity to anybody who happens to be – have jurisdiction over that wrongdoing. If they're traveling in New York and they happen to see some wrongdoing, you have to go to the New York police. It says that. But as a realistic matter, it isn't enforced and nobody actually does it. Would that matter? Well, that's – that's exactly the problem with the holding in Huppert and the view that, well, they've got to report it to somebody. But you seem to be saying that if the – in fact, the employer defined the job that broadly. You seem to say that they didn't define the job that broadly, but if they did define it that broadly, it would be binding. We'd still – we'd still have to do practical inquiry because Garcetti says the broad description is not a – cannot control. You then have to also deal with the question of whether it's no greater a duty than the members of the public have or others have, which was one of the factors to consider, isn't it? Yes. And I think – Doesn't everybody have a duty to report crimes they observe? I don't know that citizens must, as a matter of law, report a crime. Well, as a matter of duty, as American citizens, aren't you obligated – you can't go to jail if you don't report it, but isn't it a duty of every citizen to report? Right. But anyway, this case is – There is a citizen analog to the reporting of a crime. And one of the factors in Justice Kennedy's decision, or at least what some of the circuits have said since then, is that if there is an analog to duties of others, then that's not the kind of specific duty for which you lose the First Amendment. That's how I understand it. But you can't be disciplined for failure to – to comply with a civic duty, whereas if a police officer fails to cooperate with an FBI investigation of a Federal crime, presumably he could be disciplined. His police department – you know, cooperation between State and local – I'm sorry, local and Federal authorities is part of our Federal system. And I can certainly see a police department saying, look, if there's an investigation of a Federal crime, even police corruption – I mean, that's a Federal crime, too – you've got a duty to cooperate with it. You've got a – you've got a professional duty for which you can be disciplined. I mean, just failing to report that somebody has spoken in ways that violates the laws of France, I think is probably – almost everything does that, right? But the reality is that the duty typically only arises – you're ordered to cooperate with an FBI investigation. I don't think – I would think that a lot of agencies might not want you to volunteer. Kennedy, it depends on how broadly you read Hubbard. It depends on how broadly you wish to read Hubbard. If there's an ongoing police investigation of Federal crime, I can certainly see saying, you know, you as a police officer have a duty to cooperate with it. And maybe that's all that Hubbard says. I mean, I don't – I'm not saying that's true. Out of law, in every circumstance, that that would be true. I would imagine that there are certainly policies that say before you talk to a Federal agency, before you talk to the sheriff's department, you need to come to us first. And you'll probably – maybe the reality is you'll be ordered to cooperate. I know you're bent on trying to get us to overrule Hubbard, but I'm trying to give you an easier way. You know, if you don't have to overrule a precedent, it's always easier. So I don't know why you're fighting me about this, but go ahead. I think it's just my natural inclination. I don't know how it plays out, but I think it's always an easier way to go is to not overrule precedent and to see if you can reconcile it. The concern is this. The panel in Dahlia felt compelled to follow Hubbard and apply it broadly. So did the district court judge, and I imagine other district court judges. Well, but if you can win by persuading us that the Dahlia panel was wrong in feeling it had to overrule Hubbard to reach a contrary result, then you're – Okay. I know you haven't thought about it before this morning, but think about it. You might not find it easier since we've got at least one judge here who felt it was necessary to overrule Hubbard. If you were to make it a factual issue of whether something's within the scope of employment, employers would still be able to win at summary judgment, would they not, if there was not a contested – They may indeed be able to win at summary judgment. So it's just making it a triable – well, just making it an issue of fact doesn't mean it automatically goes to trial. Is that correct? Right. Making it an issue of fact at least gets you past the motion to dismiss stage, which is where this complaint found it. And it also – that would comport with Garcetti by allowing discovery, depose the chief, look at manuals, et cetera, to determine what really are the duties. Because in this case, and this certainly distinguishes it from Hubbard, there were actual threats. There were physical threats. There was the threat to put a case on him. Well, was the threat that he shouldn't talk to the sheriff or that he shouldn't tell them what they didn't want him to tell them? I – well, the threat is stated in the complaint. I guess there could be a couple of ways to take it, but it's if you spill the beans, you're going to jail. And I'd rather be fired than go to jail. Counsel, I can see where the threats are in the complaint. Where in the complaint do you allege the specific duties that applied to Mr. Donya? We – I – we didn't. We didn't. That's why I said before, knowing what I know now, I would put in allegations. For instance, if we were given a chance to amend the complaint, because that hasn't even happened yet, I would put in not just that there's no duty to do this, but I know – it's trying to prove a negative, right? I know of no duty. I've never seen anybody been asked. I've never been asked. Your position is that they have responsibility to show a duty, right? Well, we have the burden. The plaintiff has the burden to show that they spoke as a private citizen. So we do have a burden, but I would imagine. You don't have to allege all, you know, detailed specific facts. You just have to show that you've got a plausible claim. I mean, that your allegations are basically. Right. But. And here you allege the communication with the sheriff's department, correct? Right. But I think we could allege more. Well, let me ask you. But is your ultimate position that when the sheriff's department came to talk to me, he could have said, I'm going to talk to you? And that was not within his job duties to talk to that? Just not talk at all? It may ultimately be within his job duties to talk, but we haven't had a chance to even get there in this case because of the way the Dahlia panel interpreted this, applied the Hucker case. Can you explain to me, because I haven't quite got it, what business does the sheriff have looking into the conduct of the Burbank Police Department? I mean, I can understand the FBI investigation. Federal investigations of corruption or alleged corruption of local officials is quite common. So I understand that. But as far as I know, the sheriff is a coordinate law enforcement agency that has jurisdiction over unincorporated portions of crimes occurring in unincorporated portions of the county of Los Angeles, plus certain cities like my own city, Rancho Palos Verdes, where I live, where we contacted the sheriff, and they have jurisdiction there. But as far as I know, Burbank has its own police department, and no, the sheriff can't come in there and patrol and perform law enforcement duties. So what exactly was this thing that they were doing that involved? Well, typically, in my experience, the sheriff's department would come in if, for instance, they were asked to do an independent outside investigation of the department, sort of contract out the investigation. Is there any evidence that that happened in this case? No. I don't know what you don't exactly know. Is there any challenge to the authority of the sheriff's department to conduct an investigation? If they're asked to conduct an investigation, I don't know. In this case, is there any challenge to the sheriff's to the propriety, legality of the sheriff's department investigation? Does anyone suggest that they don't have that? The question is not, of course, legality. The question is whether they have authority to investigate. I mean, they can do anything they want to. It's not illegal. The question is, will their investigation carry the force of law? Is there any allegation here? Has anybody alleged that they have any legal authority to investigate a ---- Has anyone suggested? No. Is there no suggestion? Has anyone suggested they don't have the authority? There hasn't been a suggestion either way. I just suggested it. Well, other than Judge Kaczynski, one out of 11 members of this panel who thinks they may not have authority. Nobody else in this case has suggested that. I'm sorry. Does the Colorado attorney general have authority to investigate the Burbank Police Department? I don't know that we've really thought about that. I think the bigger question ---- But you better think about it. The attorney general obviously has the authority to conduct this kind of investigation. Of Colorado? What? The attorney general of Colorado? No, not of Colorado. Well, so how does an L.A. sheriff have authority to investigate? Why don't you get to the issues in this case? Can I ask another issue not related to this one? Please. A little bit different. One of the other issues we dealt with at the panel level was whether there was an adverse employment action. Right. As I understand the allegations and the complaints, shortly after Dahlia spoke with the sheriff's department, he was placed on administrative leave with pay. Right. And at the panel level, we dealt with that question. And as to the chief, we found that he was entitled to qualified immunity. Is that correct? Well ---- Isn't that correct? Do I think the results ---- No. Well, no. No. So we ---- Yes. That's what happened. That's what happened. So Steer is out of the case. Is that right?  That's right. And we recently granted a motion to dismiss Canales and Duran. Correct. Right? So that leaves Rodriguez, the city of Rodriguez, Murphy and ----  Panaranda. Right? Right. So really, isn't your case just going to boil down to a claim against the city under Monell? It may, but I think that Rodriguez, his threats alone, this was more than just bad-mouthing in a threat like in the Nunez case. These were threats that clearly fall with under Casalter. Be quiet, run, or go to jail. And this is somebody who says, I've done this before. And that alone, I think, is an adverse action. I mean, even a 5-year-old knows you can't tell somebody I'm going to put a false case on you and put you in jail. In the panel decision, we said that it was a question of fact. Right. Exactly what happened to him. Correct. Right? It's a question of fact.   And he was placed on administrative leave. On his ---- when he was placed on administrative leave. He was placed on administrative leave with pay. Right. Now, why should that be an adverse employment action? As I understand, cases from other circuits have held that suspension with leave or leave with pay is not an adverse employment action. Okay. Those cases that were cited by ---- they were actually cited in the Dahlia opinion, and they were also cited by the city defendants. Right. All of those cases dealt with Title VII retaliation. And they all predate the Supreme Court's decision in Burlington, Northern v. White, where the Supreme Court resolved the difference between what's an adverse action for purposes of Title VII's anti-discrimination clause and Title VII's anti-retaliatory clause. And actually, citing Ray v. Henderson from this Court, the Court said that for anti-retaliation provision, the anti-retaliation provision, the test should be lower. So is it conduct which will dissuade somebody from engaging in the protected conduct? Such as the physical threat, which was alleged here that he felt physically threatened when the ---- I forget which person said to him. He brandished a weapon. Yeah. And there was the, you know, in the such-and-such case, there were only two witnesses and one of them is dead. That sort of, you know, physical threat would not result necessarily in financial loss, but in your view is sufficient under the First Amendment theory? Yes, because the case is and even the case, even the case of the other case. Because it would kill a reasonable person from speaking. Right. It would dissuade him from engaging in the protected conduct. Mr. Margis, I. The question of whether there's the administrative leave with it paying is an adverse employment action matter, if there are other adverse employment actions, for present purposes? Well, I think it doesn't matter whether it's paid or not paid. No, I'm asking you if there were threats, physical threats, and those were adverse employment actions. Does it matter for present purposes whether the administrative leave was also an adverse employment action? No, because I think there are two independent adverse actions. As long as there's one, the complaint can stand. I'm sorry? As long as there is at least one, the complaint should stand is the point. I'm sorry. Do you need an adverse employment action? Do I need an adverse employment action? Yes, for a First Amendment retaliation case, I certainly need one. Just a plain threat alone is not enough. Just what? A plain physical threat alone is not enough. Well, what I'm saying is that If an employer retaliates by saying I'm going to beat the heck out of you, that's not enough? No, I'm saying that that is enough. Okay. So you don't need an adverse employment action. That employment action is an alternative theory. One of them is I got punished my job. Another one is I got physically threatened, right? Right. They are alternative theories. Alternative or both, certainly. So what are the consequences of the administrative leave for him? I know you say that there were actually some monetary consequences, even though he was on salary. Is that right? Right. Well, he lost his opportunity for overtime. He was on administrative leave, and this is not in the complaint, for 14 months. So certainly that has consequences. You disappear. But he also had reputational consequences. I'm sorry? Reputational consequences. Reputational. He also you typically lose your peace officer powers. You have to turn in your badge. You have to turn in your gun. You're not allowed to go to the department. You have to turn in your key. It's almost like a punitive assignment. You typically you have to be at home, ready to answer the phone from 8 to 5, Monday through Friday. It changes your schedule. And it also gets rid of you, so you could stop becoming knowledgeable about the corruption that may be going on at the department. Does it affect accruing time for promotions, or is it kept in your personnel file? Do you have to list that as a disciplinary action? Certainly the fact that you're on admin leave would be in your personnel file. But typically what happens is following the outcome of the investigation, there's a disposition. Mr. Margis, you mentioned at the outset that Huppert needs to be overruled. You've got Posey and five or six other cases that talk about these being fact-specific. Is there a way for us to decide this case based upon Posey or any of those kinds of cases, distinguishing this case, and leave Huppert standing? Or must Huppert be overruled from your perspective? Well, it was suggested to me that that might be an easier way to work around it. The facts are certainly distinguishable as alleged. We don't have the allegations of physical threats. So are they irreconcilable? If you apply Kristol broadly, then yes, I think that that's irreconcilable with the Supreme Court's cases on the First Amendment and the other cases from this Court. So from your perspective, it's kind of an all or nothing. You want Huppert gone, or you're not successful. No, I would not say that. I think that the Supreme Court's case is irreconcilable. And I think the path of least resistance is probably to distinguish it on its facts. Nothing in Huppert can be unreasonable. And how specifically would you distinguish it? Well, nothing in Huppert talks about the circumstances in this case. Well, I understand that. But how would you specifically distinguish it? If Huppert says that police officers have a duty to report wrongdoing wherever it occurs, and he does say that, is that the premise or not? Is that something like you have to report it and test to your superiors and testify about it freely? It doesn't specifically say you have a duty to report it outside the chain of command. But that is what Huppert ultimately decided. Correct. You know, I'm going to have to stick with my original position. I do think it needs to be overruled. The panel thought so. Through the discussion. Right. So I'm in good company. Mr. Norgas, can I ask you a question, a pleading question? You allege that the defendants other than Chief of Police Stair and Burbank caused your client to get the adverse employment action. I'm not sure I heard the question. As to defendants other than Stair and City of Burbank, you allege that the other officers also were responsible for the adverse employment action? We allege that Rodriguez's act itself is an adverse employment action, and that at least he and the others set the administrative leave in motion. And I have 23 seconds left. Did you make a motion to amend your complaint? No, because it was dismissed without leave to amend. Did you propose an amendment to your complaint? In opposing the motion to dismiss, we ask that we be granted leave to amend. Did you propose, according to the local rules, did you file a proposed amendment? No. Thank you. But you never asked for leave to amend. Yes, we did. When did you do that? That's in the record. It is? At page 115 in our opposition to the motion to dismiss. 115 of the excerpts? I'm sorry? This is 115 of the excerpts? 115 of the excerpts, yes. Okay. If the Court's inclined to grant any part of the defendant's motion, please respectfully request an opportunity to amend this complaint. But after you got the adverse ruling, did you then come in and ask for one more chance to amend? I didn't think that we could. It's dismissed. The case is gone. We appealed it. Are you aware of our line of cases that says that a district judge may not dismiss without prejudice if there is a basis which could be alleged even if the plaintiff doesn't request it? Yes. Even if it's not requested. And I think it's the same rule in the State court. But in this instance, the ground for dismissal didn't seem to leave anything left, I presume. Well, I – the district court interpreted it as us not being able to allege any plausible set of facts that would survive Huppert. And I guess that's it for the questions. Thank you. Thank you. We'll hear from the other side. Good morning, Your Honors. Stephen Rennick of Manning & Cass, Elrod Ramirez Trestor. I represent Defendant Murphy. Counsel for the other defendants kindly allowed me to argue on behalf of all of them. However, they are here in the courtroom. If the Court has any specific questions directed to any individual defendant, they are willing to answer anything the Court would like to. Maybe you start by telling us what authority did the sheriff have over any corruption in the Burbank Police Department to investigate? I just don't know. What is on the record and what is in the law on that? As far as I know, there's nothing in the record. I – and my understanding, though I don't have specific knowledge, is that the sheriff may have been brought in by the city itself. But regardless of that – I mean, may have brought in, you mean like as a contract investigation? I don't know anything more than that. There's nothing on that, right? That would be a factual issue that somebody would have to allege and prove. Correct. But putting aside any such contract investigation, does the sheriff of Los Angeles have jurisdiction over conduct occurring within the city of Burbank or any corruption in the Burbank Police Department? I believe he does. FBI does, for sure, right? FBI can – Your answer is that I believe it does? Yes. Thank you. And what do you – California Penal Code 830.1 sub A sub 1, which I cited in my brief for other reasons, talks about how a peace officer has authority over any crime that occurs within the political subdivision of his employer. Burbank is in the county of Los Angeles, therefore it's within the political subdivision that hires and maintains the sheriff's department. Mr. Rennick, let me refer you to a case that you cited in your brief. Yes. The Alhambra Police Department case. Yes. Do you have that in mind? Yes. All right. Mr. Torrance, who was being investigated by the sheriff's department, was told two things by the sheriff's department. Number one, that the chief of police of the city of Alhambra had asked the sheriff's department to investigate the charges. Number two, he was told quite clearly, you don't have to answer any of our questions if you don't want to. Now, how does that square with your citation that there's authority by the sheriff's department to investigate if the sheriff's department up front says, you don't have to answer any questions if you don't want to? Well, I think that has to do with the general right of... I mean, as a police officer, I thought you were saying that a police officer had to answer the questions of the sheriff's department. The sheriff's department in the Alhambra case made it quite clear that they didn't have to. The reason I raised the statute was in response to the question as to what the authority of the sheriff's department was to investigate. I don't know that that statute imposes a duty on an individual officer to cooperate with the investigation... And no duty to report a crime to the sheriff's department. That I disagree with. That's a different issue. Well, how do you square the statement, you don't have to answer our questions, with the statement, you have a duty to report to the sheriff's department? Part of this is the issue of what the consequences are of taking, of exercising rights. To go back to the Crystal case, which... The Crystal case said it very clearly. You have a duty to report to your superiors or to answer questions to the grand jury. Not to other branches of government, and not to other agencies, not your superiors. And mind you, in the Alhambra case, there was a specific finding that the sheriff's department did not act as a general agent of the Alhambra police department. So how do you square that case with this? Again, if I could bounce back to the Crystal case, the Crystal case was very explicit that the officers had the right to exercise their Fifth Amendment privilege not to testify. And be fired. That's right. That's the point, is that if you exercise those rights, and so if an officer chooses to exercise his right as a citizen not to speak with... Are you saying we should read the Alhambra case where the sheriff's department says you don't have to answer our questions with an implicit threat that if you don't answer our questions, you may be fired by Alhambra? I believe... Did you see anything like that in the report of the case? I don't recall the specifics of the case well enough to be able to... Well, you cited it in your brief. I'm not exactly in your position about the breadth of Crystal as it wraps into this First Amendment inquiry. Is it that you have to answer questions by any law enforcement agency that asks you, or is it that you have to investigate? Did he have an affirmative obligation to investigate and affirmatively report to the sheriff, the FBI, the attorney general, and anybody else in sight, or what? Yes. I believe that that is what the line of California cases say, that police officers have a duty to report crime and report it effectively... To any law enforcement agency that could possibly have jurisdiction over it. Not to anyone, but obviously there's a process that they would normally follow, and the normal process would be to report it to your department. But if the department is, in essence, as Mr. Dahlia is claiming, the criminal entity, then reporting it is a meaningless exercise. And if there is, as we believe, an expectation under California law that a peace officer effectively report crime, then to use... So your position as a practical matter boils down to this, it seems to me. You are a police officer. You see criminal activity by your colleagues around you, and you decide, for example, let's say it's race-based, and you go to the federal government, to the Civil Rights Division, and you are fired, put on leave, beaten up, whatever. So what? There's no claim. That seems to be your position. It's not that there's no claim. It's not a First Amendment claim. What kind of claim is it? There's a number of retaliation, whistleblower statutes that exist in California. They were actually pled in this case by the plaintiff. And I would say that that has to be the quid pro quo, that if a public entity or the State is going to say that your duties restrict your rights, there has to be a balance that says that this... Kagan. I'm sorry. I didn't hear the question. Where is the has to be coming from if it isn't from the Constitution or either the First Amendment or some other constitutional provision? I think due process, equal protection, I – since I – we don't have a specific case for it, I haven't analyzed that, but I don't doubt that we could come up with something. It seems there's just... But you think that's perfectly okay under the First Amendment? That that wouldn't be a First Amendment claim, that because you spoke in – to a separate entity about criminal activity in your own department, that you can be punished for that speech under the First Amendment? No, it's not that you can be punished under the First Amendment. It's that you don't have a claim to seek monetary recovery under the First Amendment. That's what Garcetti said, is that when you speak as part of your job duties, it's not a First Amendment issue. Well, that begs the question, I guess, that we've been struggling with here, which is what is a part of your job duties? How broadly is that defined? And I absolutely agree. Our position is that, starting with the Kristall case and going on to the numerous California cases that have cited to it, including the California Supreme Court case, which has cited to it twice, that this is well-established as being the duties of a police officer. It's not that only the sheriff has authority. I mean, can the sheriff investigate a burglary in Burbank? I don't know. It's a State law, right? It's a State law. My guess is if the sheriff came in and started investigating a burglary or robbery or anything like that, he wouldn't have authority. The Burbank police would tell him to get packing. I mean, don't you have a responsibility to establish that if you want to rely on Hubbard and Garcetti, that if you want to rely on that, that in fact this is an agency that has authority to investigate the crime? And you haven't done that. The fact that perhaps Mr. Dahlia, in speaking with the sheriff's department, was speaking to the wrong agency, I don't think is relevant to the issue. When you say the wrong agency, if it's not an agency that can investigate, then he has no duty to speak to them. In that case, Garcetti goes out the window. I mean, if he goes and talks to the Beverly Hills Police Department, right, that wouldn't be in his – they don't have authority over Burbank. If he is doing it pursuant to his duty to report crime, the fact that he may be doing it ineffectively in the sense of going to the wrong agency, I don't think is determinative of what his duties are. The issue is what are his duties, and it's not – Suppose he goes to the Los Angeles Times, then what? That – that, I think the case law is clear, is not part of his duty issue. Okay. So he could get a – he'd have to have a 1983 claim there, but that if he went to the Los Angeles Times, instead of reporting it internally, he would catch an IA and then they could fire him because he didn't report it internally, right? Perhaps, but then that – But, you know, so I guess it's – there's this situation where if you have a correct police department, just for assumptions, I'm not saying that's the case, and a person's being threatened, which Mr. Dahlia is claiming that people are mad-dogging him, they're coming by and saying, have you talked to IA, or you better not tell him, you know, all of that. So instead of reporting it internally, as they're required to do, they go outside. They have a 1983 claim, but then they could be fired because they don't follow their internal policies, is that right? Yes. And I think the other – Well, he would have a defense to the – to the internal discipline. But for this present purposes, his claim would be good if he went to the Los Angeles Times. If he went to the police – the agency that doesn't have authority, some people on this panel might believe that, like going to the Times, it's not like going to an authorized – and so he would be protected there if the sheriff doesn't have any authority here. Well, I mean, that's one theory. But your theory is if he went to any legitimate agent, law enforcement agency that had jurisdiction over the case, that would be his obligation under something under the Department of State rule, and therefore he's not protected by the First Amendment. Yes. So I wouldn't limit it just that it has to be the appropriate agency. If he's doing whatever he's doing in a reasonable, objective belief that this is part of his duty, then I believe it's outside the narrow First Amendment. And would this apply if he were driving down the road in Alpine County and he saw someone speeding, that that duty, he would have that duty under the law and he must report that, or he would be subject to discipline? I believe that under California law, he would be obligated to report it, whether he would be subject to discipline, I'm not sure. But I believe California law certainly expects him to enforce the law wherever. And how do you relate that to the Justice Kennedy's discussion of if your duty is an analog to other people's duties? It doesn't say an analog in the sense that the other people will be punished criminally. It's just as if they have a comparable duty in civilian life. How do you respond to that analog? Because I think there's a difference between we're talking about two different types of duty in that sense. We all, as citizens, have civic duties to act in certain ways, but they're not requirements on our conduct. Here, our position is that California law. I think that's what duty is. Pardon me? I think that's what duty is. It is a requirement on conduct. It may not be a legally enforceable duty, but duty is, in fact, a requirement that you prefer, that you behave in certain ways. That's what duty means. But a legally – then the distinction is between duties that are – that have legal force behind them and ones that don't. There is no – But does the employer, as you – in your concept of California law, it's kind of a free floating duty, regardless of what the – his actual employer requires him to do. So if his actual employer was to say, as I would suspect many of them do, you know, if you have a problem, come to us, don't go outside, that would not be binding on him? No. And actually, I cited in my 28J letter a California case called Inouye, where I believe it was Los Angeles County, tried to argue that it wasn't responsible for the conduct of one of its officers off-duty because it had very specific policies saying you can't do what he did. And the Court came back and said, no, under California law, what he did was acting in the role of a police officer, and therefore, he was acting as a police officer and can't say he's not. That seems the obverse of what I was asking. What I'm asking is, if the employer specifically limits the general duty to report and investigate crime to certain circumstances and certain channels, does the employee have the not only authority but obligation to disregard that? If California law says that that is part of his State-imposed duties, then yes, that law supersedes the county's duty. And where does it say that? You have an obligation that is broader than the obligation as your employer describes it. I believe the line of cases from Kristol set out what the duty is, and the Inouye case says that State law trumps local policy. So, counsel, is your reliance on that line of cases consistent with our precedent that says the determination of whether an employee spoke as a citizen is a fact-based question? Is your argument consistent with that precedent? Why? In Garcetti, there's the comment that we have no occasion to define the scope of an employee's duties in cases where there is room for serious debate. Where there is uncertainty, then the fact-based analysis is necessary. What language says that, if there is uncertainty? Well, if there's a State law that explicitly says this is part of your duty, such as attorneys have an explicit duty to maintain confidences, it doesn't matter what an employer may say. That's a State-imposed duty. There is no serious doubt about that. Uncertainty may be my language, but my art position would be that where the State has explicitly established duties, there is no call to look factually beyond that, that those are the duties that exist as to that particular type of employment. And which are the State statutes that set forth that duty? I don't – I don't have a specific statute. I believe it is the line of cases from Crystal Law. The State legislature hasn't said anything. I don't believe that there's – I imagine you could craft together some of them, but I can't point the Court to any specific statute. And you've been thinking about this for a long time. To be honest, I wasn't planning on arguing this part of the case, so no, I haven't been thinking about it that long. So, but I will – You're relying on Crystal and that line of cases. Yes. You're relying on the Crystal line of cases. Yes. And I admit that I don't have anything further. But Crystal, in fact, does not say what you want – I mean, first of all, it isn't based on any statutory provision specifically. But second of all, it doesn't say what you want it to say, as far as I can tell. It says you're supposed to report it to the superiors and justify it. The comment about superiors is in a separate sentence than the one that generally lays out what the duties are. Now, whether that's a limitation on the first part or not, the point that I would make is that you can't look at Crystal in isolation. I think if Crystal was the only case out there, as the panel – the way the panel discussed it, there might be a real question there. Is there any case that says there's a duty to report it to people other than your superiors? I don't believe there's a specific case. So then what difference does that make? You say there are other cases, but there's no case that addresses this question. The line of cases have applied this to a variety of different issues, many of which have nothing to do with reporting issues. And our position is that this is a general statement of California law, of the general duties of peace officers. If there is any uncertainty about the scope of California law in light of the numerous cases, it probably is a matter that should be sent to the California Supreme Court to resolve. But our position is it is clear, but if there is uncertainty, then that's uncertainty as to the scope of California law and whether to raise that. Who is required to raise that? Well, the duty, the initial – I mean, there is not a general duty to report something to everybody, to anybody at all who wants to – there's no such duty. I mean, who has responsibility to make a showing or provide proof, if necessary? Or for a citation, that, in fact, this speech was to somebody who had authority to which – to whom he had a responsibility to speak? Who – isn't that your responsibility? You just haven't met it, and so that's – why isn't that the end of the case? No, Your Honor. The burden, the pleading burden – You brought a motion to dismiss, right? Right. Okay. So you have to show, you have to say, you know, you're saying, look, I'm pointing to something that says he had a – he was speaking in the line of his duty. I don't see why you've done that. I – you know, you just haven't cited anything that persuades me that speaking to the sheriff is something that the Burma police officer has a duty to do. FBI, yes, the grand jury, perhaps, the attorney general of the State, certainly. But the sheriff? I mean, where do you cite something that establishes that's his duty? Well, we don't, but then our position has never been that his requirement was to report it to any particular agency, but that his duty was to report it, and that that's what happened. Well, let's say he had been reporting it to the L.A. Times. That's not a police agency. Well, so it's not a duty to report, period. It's a duty to report to an agency of some sort that has – as to whom he has a duty to report. And where have you established that he has a duty to report this or to speak to this to the sheriff's department? Where is that authority? Where is that proof? If you say no, it's not there, then I guess you lose. You know, then we go back and it's a question of fact, and we – you know, that's why we have juries. It's not a question of fact, because it's ultimately a question of the law whether or not the reporting it to any particular agency is a requirement of the law. We don't believe it is, given the law. But you've given up that fight by saying reporting it to the L.A. Times doesn't – isn't satisfying, right? So not reporting to anybody. So don't you have to establish that this is somebody to whom he had a duty to report? Isn't that your – your burden? I think reporting it to any agency that investigates a crime. Kennedy, you have a duty to report it to any law enforcement agency, I assume is what you're saying. Yes. You have a duty to report it to a law enforcement agency. The sheriff of San Francisco? And whether you're correct or not in picking the right law enforcement agency, you have a duty. And if you – if they tell you we're the wrong agency, they'll either turn it over or they'll tell you to go there. It's your understanding of the State law. Yes. I don't want to make your argument for you because I don't basically agree with you. But I do agree with your characterization of what my position is. Thank you. Particularly where you've been – your claim is that you've been threatened. Your life has been threatened by people who are part of your particular agency like Burbank. And so you certainly have a duty to report it to another law enforcement agency. Exactly. That would include the sheriff. Of San Francisco? I mean, I don't see where there could be any other rule of law. I agree. Given what's going on in the world today, all you have to do is pick up the paper. It hasn't changed in 1,000 years where power is abused and the code of silence is enforced. Counsel, our decision in Huppert relied largely on Crystal. Is Huppert consistent with Garcetti, in your view? I believe so. My position is that where State law imposes duties, that meets the Garcetti requirement of determining the practical inquiry. I don't think the practical inquiry necessitates a detailed investigation of the practices of the agency if there is an overarching State. Could you tell me once more how you are getting from Crystal to Huppert in terms of the breadth of the duty? When it talks about – I believe Crystal mentioned reporting corruption, you know, reporting crime. I believe these are the sort of things that are inherent in – It's like out of a civics textbook. They have all that stuff about how you're the keeper of the peace and you help the community and you do all these wonderful things. But when it comes down to what you actually have to do, it says report to your supervisor and testify truthfully when you're asked. You're correct, Your Honor. But – So we take in the whole civics textbook? Well, first of all – You help people in need and you investigate wherever you see it, in another State,  I mean – Well, but this isn't a civics textbook. It's a – But that part of Crystal – I mean, you're incorporating a lot more, it seems to me, or you're reading a lot into Crystal. It's not just Crystal. It's the fact that many other cases have – But I asked you before whether there was any case that said there was a duty to report outside, other than to your superiors, and you said no. And I agree, but – So then where are you getting this from? It's – it seems a logical extension of the duties that Crystal – So in other words, there is no California law saying this? Either statutory or – or decisional? Well, we use case law to inform how we address new and different situations. The fact that no particular California case has addressed the issue of what do you do when your own agency is corrupt. But, you know, I would point to the – Well, then how could you win a motion to dismiss without developing the record further and determining exactly what happened here? Because there's a lot of questions here. We don't know exactly. But what we do know is that, according to the complaint itself, Mr. Dahlia reported criminal misconduct by officers in his own agency to another law enforcement agency. And there's no California law, either statutory or decisional, saying that he had a duty to do that, is there? There is no explicit case explicitly saying that. However, when you look at Crystal and it talks about – I'm sorry. Is that a yes to Judge Breslin? I'm sorry. Is that a yes to Judge Breslin? Judge Breslin asked you a question, and you replaced the question. But once you – can you say yes or no to what she asked? Yes, there is no case explicitly holding in that very narrow factual circumstance. However, when you look at Crystal's reference to superiors, it simply is inconceivable that the duty stops at your superiors when your superiors are the criminals. That you – that an officer's duty does not include reporting the criminal activity of your superiors. It merely requires you to tell your superiors, hey, I know what you did. And then you go off and do it. We don't know. I mean, there's certainly nothing – you're trying to argue as a matter of law. California law says this. And you haven't pointed to anything in California law that says this. If there is a duty to report corruption, it clearly has to be reported to someone who can act on that. And reporting it to the FBI – You can report to the FBI. You can always report to the FBI. They have – they do police corruption. So if you're looking for someplace to report, you know, there's plenty of places to report. Well, but then we're creating a situation where if the officer reports to the right agency, he has no First Amendment claim. That's the way it works. You have a duty to do certain things. You don't have a duty to do other things. If Gossett is to mean anything at all, it has to be limited to the things where you have a duty to speak. You know, it's – But the duty to speak is encompassed by the obligation to speak certain things. I don't think it is an obligation to speak it to explicitly defined people unless there is something that says that. I'm sorry. That's just the way it works. You know, police are supposed to speak to explicitly defined people and not to other people. You know, there are privileges involved. There are questions of privacy. Of course we expect police to only speak to those people to whom they are authorized and not those who are not. What's so strange about that? But who is explicitly authorized isn't always that clear. And I don't think that an officer who reports it to the wrong law enforcement agency is acting outside the scope of his duties. Well, it's your position that they reported it to the right agency. As you started your discussion, I think you said that Burbank might have invited them in. The sheriff might under the law have the authority, even if he wasn't, they weren't invited in. I think all Judge Kaczynski is arguing, I guess, is that nobody has established that it is the right agency. And maybe if we researched the codes, we would find that it is. Maybe if we researched the codes, we would find the FBI is. But nobody has discussed the question or contended that this is not the right agency except the question has been raised as it could be raised at Mountbank. Let me ask you this. If you define the duty that broadly, how is, if you put someone on administrative leave, you ask for their gun and badge, and you say stay at home, don't come to the police department, don't act like a police officer, how is that not an adverse action when you say that police officers have to do everything? The art... The position that I would take in terms of adverse employment action regarding the issue of being put on administrative leave is narrowly defined as the issue of being put on administrative leave. If there are other aspects of being, of whatever that employment action is, that are beyond the simple act of being put on leave with pay, those may be, those may be adverse employment actions. But leave by definition means all the things Judge Callahan just said. You don't come to the police department. You don't have a badge. You don't have a gun. You don't have a... And you only do it when you think people are in trouble. You don't put people on administrative leave when you would give them a commendation. Otherwise, you don't say, hey, I'm going to give you a bonus five days off. No. I mean, it's like you strip them, you strip them so that you're getting ready to fire them, but you hold back because you're not sure you have enough to do it. And so you restrict your liability and say, don't really act like a police officer. I won't take all your money away, but don't act like a police officer. Right? Well, that no. There are cases, many situations where employees, not simply police officers, are put on administrative leave because accusations have been made against them, and there's an investigation ongoing. And, but that's not a... This investigation was ongoing for how long? I believe it was mentioned 14 months. I'm not sure. The point of question, the issue, legal issue, is would this action taken against him chill other people who would be reluctant to do what he did? Now, wouldn't what happened to him here? He also alleged in his complaint that he missed the opportunity to take a promotional test. Well, now... Wouldn't all of what happened to him, don't you think that would chill other people from doing what he did? Well, the additional facts that Your Honor mentioned are actually not in the pleading. The only thing that's in the pleading is... Well, take what Ms. Callahan said. Well, again... Wouldn't that chill other people in his position from doing what he did? Those things might, but those things, A, aren't alleged, and, B, are while they are associated with being placed on administrative leave. It is, theoretically, there's no reason why an officer couldn't be placed on administrative leave and be allowed to keep his gun and be allowed to act as a police officer outside... But they don't. They don't. No one wants to be on administrative leave. Of course. It's a very bad thing. And of course. And if, in fact, those additional facts, you know, administrative sanctions are imposed, my position would be that's the adverse employment action. Those are the things that need to be alleged. Those are the things that then can be evaluated as to whether... But you don't need an employment action, right? The physical threats are enough. Our position is that... No? No, I agree. The only issue here is, is there a First Amendment claim, and that requires the adverse action. I'm sorry. That's my question. You need an adverse action in order to have retaliation. You can have retaliation with just physical threats, can't you? You're going to get arrested. We're going to throw you in jail. We're going to trump up a case against you. We're going to get you convicted of a crime. Why isn't one of those enough? Because they are in response to the alleged speaking. And the speaking is either part of the job duties... But you're not saying that those are not adverse actions, if there is otherwise a cause of action? Correct. Yes. Yes. I see my time is up. Could I take one minute, Your Honor? No. Thank you. You've used up your time. I'll give you a minute for rebuttal if you wish to take it. The only thing I wanted to point out about Kristall is... Could you just get a little closer to the mic? The only thing I wanted to point out about Kristall is whether it's even viable in light of the Supreme Court's cases in Garrity v. New Jersey, Gardner v. Broderick, because really that case is about do you waive your Fifth Amendment, your ability to invoke your Fifth Amendment right when you become a police officer? And subsequent – and Kristall said, yeah, you do. You waive that immunity. You're fired if you exert it, invoke it. But subsequent cases, and even California law, has said that that's no longer the  If you can be administratively compelled... Well, it just shows the consequences of not speaking can be different, but it doesn't go to the question whether you have a duty to speak, which is what Kristall spoke  Well, I'm sorry. Well, Kristall spoke to a specific question. Do you – can you waive – can you invoke your Fifth Amendment right to not testify before the grand jury and keep your job? That was the only question that Kristall decided. If you read the next paragraph after that laundry list, that says that's – it shows that that's all it decided. Also, I question whether – I don't remember which judge brought it up, maybe several is that based on a statute, and it seems like Kristall has judicially created police officer duties, and that's what we're following now. That's something for the legislature or for the employees to do. And I think Kristall can only be as strong as whatever statutes or department manuals, et cetera, that it's based on. But is Kristall in conflict with any statute? I – frankly, I don't know. It's so general that it could or couldn't be. And that's all I wanted to add. Thank you. Okay. Thank you very much. Our case just argued. We'll stand submitted. We're adjourned. All rise.
judges: Kozinski, Pregerson, Reinhardt, O'scannlain, Graber, Paez, Berzon, Rawlinson, Callahan, Bea, Smith